Tayior, Chief-Justice,
 

 delivered the Court’s opinion:
 

 The Defendant was indicted for sending the prosecutor a challenge to fight a duel. The act of 1802, which alters the Common Law punishment, does not change the nature of the offence which consists in sending a challenge; either by word, or by letter, to fight a duel. Upon the trial of the cause, the letter, containing the supposed challenge, was offered in evidence, but objected to by the Defendant, on the ground of -several variances from the statement of it in the indictment; it was, however, admitted by the Court, and proved, and read to the Jury. It was further insisted, in behalf of the Defendant, that the letter was not a challenge to violate the peace of this State; and that without such intent, the Defendant could not be guilty of the offence charged in the in
 
 *490
 
 dictment. To these objections, which appear on the record, it has been added in the argument here, that the indictment charges the Defendant with an intention to provoiie the prosecutor to fight a duel with pistols, or some other dangerous and mortal weapons, whereas, the letter specifies no weapon ; and if its real meaning were to fight witli weapons, the recital of the letter should have been accompanied with proper inuendoes to enable the Jury to affix a judicial sense to it. The same observation has been applied to the letter in relation to its being a challenge to fight, and to leave the State, a construction, it is said, which can only be put upon it, by understanding something not expressed in direct words.
 

 1. The fact to be enquired into by the Jury, was, whether the Defendant sent a challenge to fight a duel. The evidence relied on to establish the fact, was the letter written by the Defendant. But if no letter had been written, the fact might have been proved by other means, since neither the Common Law, nor the statute, requires a challenge to be in writing, in order to constitute a crime for sending one.
 

 To recite the letter in the indictment, is to set forth the evidence by which the fact is meant to be proved, and does not, upon principle, seem to be more essential than, in case of a verbal challenge, it would have been, to set out the particular language in which the challenge was created. The law requires no more than that a complete offence should be shewn in every indictment, so as to enable the Court to give judgment upon it, in case a demurrer were joined, or a writ of error brought. Upon this principle it is, that indictments for sending threatening letters must set out the letters themselves, in order that the Court may see ^whether they are of that kind which the statute renders criminal: the same rule extends to forgery; the instrument charged to be forged, must be set out
 
 verbatim,
 
 in order that the Court may see that it is such an instrument as the prohibition of the law extends to. But if the Defendant had been situ-
 
 *491
 
 ply charged with sending a challenge to fight a duel, without any recital of' the letter, the introduction of which, as evidence, however, had satisfied the Jury of the fact, and enabled them to pronounce a verdict of guilty, the Court must have seen, upon the face of the indictment, that a crime had been committed, and the specific degree of it pointed out, so as to enable them to apply the punishment annexed by the act of 1802. Supposing, however, that the recital of the letter is not merely a compliance with custom, but required by principle, it will admit of serious doubt whether the variances are fatal, even according to the English authorities, which, Lord Mansfield says, have been carried to a great degree of nicety indeed. The rule laid down in
 
 Dr. Drake’s
 
 case, (2
 
 Salk.
 
 660,) was, that if an indictment undertakes to set forth the tenor of an instrument, though a literal variance is not fatal, yet if the mutilated word makes any other word, as
 
 nor
 
 for
 
 not,
 
 it is fatal. This was decided on a special verdict, where the Court, looking at a record, can presume nothing, but is bound to pronounce the abstract proposition of law. But common sense seems to dictate, that the enquiry before a Jury should be, whether the words used in the indictment signify the same thing, although misspelt and mutilated with those in the letter ,• and that a variance, no ways altering the sense of the letter, ought not to be fatal, according to the rule in reciting a statute, where the words
 
 sea
 
 of Nome were used for
 
 see
 
 of Rome—(1
 
 Vent.
 
 172. Accordingly, in the
 
 King
 
 v.
 
 Beach,
 
 (Cowp. 229,) which came before the Court, on a motion to arrest the judgment on the ground of variance between the indictment and affidavit, the word
 
 understood
 
 being wrritten without the s, Lord Mansfield concludes his opinion by saying,
 
 “
 
 this is a case where the matter has been fairly tried, and where the omission of the letter
 
 s
 
 certainly does not change the word j therefore, we ave all of opinion that the Jury were very right in reading it
 
 understood.
 
 
 *492
 
 jn the case of the
 
 King
 
 v.
 
 Hart,
 
 (1
 
 Leach,
 
 172,) it was also left to the Jury to consider, whether the word
 
 re-cdvcl,
 
 in the indictment, signified the same thing with
 
 receive¿
 
 j[n the bill of exchange. The prisoner was convicted, but the judgment was respited, for the opinion of the Judges, who thought it to be a proper question for the Jury. In these cases, the Jury must have judged of the meaning from the contextand the principle upon which they are decided, would seem to warrant the Jury, in this case, to have found as they have done, that
 
 differences
 
 signified the same thing with
 
 difference, immgined, imagined, clumny, calumny,
 
 and
 
 there, their.
 
 In relation to the last word, there is a remark of
 
 Powell,
 
 Judge, in
 
 Holt’s
 
 report of
 
 Dr. Drake’s case,
 
 which is worthy of notice,
 
 “
 
 that he did not mark this to be so small a variance of a letter, as if it had happened in false spelling or abbreviation.” Now, if a word should be changed by false spelling into another word, but one having the same sound with that for which it was written, it cannot be difficult to judge from the context what the meaning is, as in the sentence where
 
 there
 
 is put for
 
 their.
 
 If, however, these inferences should not be correctly drawn, and the strict rule, laid down in
 
 Drake’s case,
 
 is to govern where the Jury has passed upon the meaning of a paper, we are satisfied that the act of 1811 applies to the case, and cures the informality. It is a refinement, in the sense of that act, and there does appear to the Court sufficient, in the face of the indictment, to induce it to proceed to judgment. If the Court were not to listen to that act upon this occasion, they might be justly charged-with being deaf to the legislative voice, and permitting that
 
 “
 
 disease and reproach” of the law yet to remain, by which a person, convicted of an offence, may seize upon the merest
 
 apices litigandi,
 
 to evade the punishment.
 

 2. A challenge to-fight a duel out of the State, is indictable for the same reason that a challenge to fight
 
 *493
 
 iit the State is, because its tendency is to break the peace of the State. Its natural and probable effect is, to excite instant irritation and animosity, and to rouse the passions to an immediate breach of the peace.